No. 36,218

J. J. Bouska, as Next Friend of and for Sophia Bouska, an Incompetent Person, *Appellant,* v. Tony W. Bouska, Executor of the Will and Estate of Anna Bouska, deceased, Tony W. Bouska and George F. Bouska, *Appellees.*

(153 P. 2d 923)

Opinion filed December 9, 1944.

*N. J. Ward* and *Guy E. Ward,* both of Belleville, were on the briefs for the appellant.

*W. D. Vance, Fred Emery* and *Fred Swoyer,* all of Belleville, were on the briefs for the appellees.

The opinion of the court was delivered by

Wedell, J.: This was a claim by J. J. Bouska, as next friend of and for Sophia Bouska, an incompetent person for whom no guardian

had been appointed, against the estate of her deceased sister, Anna Bouska, who died testate.

The only question presented on appeal is a ruling by the district court adverse to plaintiff interpreting the legal effect of certain written instruments to be noted presently.

Separate demurrers were interposed to plaintiff's second amended petition by defendants, Tony W. Bouska and George F. Bouska, and by Tony W. Bouska, executor of decedent's estate. We need not note the grounds of the demurrers. They were overruled and from those rulings defendants do not appeal. In connection with the ruling on the demurrers defendants requested that the court, prior to trial, determine the legal effect of two bills of sale set forth in the second amended petition and on which plaintiff relied primarily to support her theory that she was the owner of decedent's entire estate. Those instruments were executed separately by her father and mother.

Joseph Bouska, the father of plaintiff and the decedent, died intestate in August, 1921. In April, 1921, he executed and delivered one of the instruments in question. It reads:

"Know all men by these presents: That I, Joseph Bouska, in consideration of one dollar, love and affection, do hereby sell, assign, transfer and convey unto my wife, Anna Bouska, and my daughters, Anna Bouska, and Sophia Bouska, their heirs and assigns in equal amounts and undivided interest, all of my personal property of every kind, nature and description which is intended to mean all moneys, notes, mortgages, stocks, bonds and other collaterals which I may now own and to hold as their own.

"In witness whereof, I have hereunto set my hand this 12th day of April, 1921, in the presence of my wife, Anna Bouska, and Chas. W. Yoder.

"(signed)   Joseph Bouska

"Chas. W. Yoder, Witness
"Anna Bouska, Witness"

It was alleged the mother and each of the daughters, grantees in the above bill of sale, made bills of sale in favor of the others whereby the beneficiaries thereof were made joint owners of all such property. The instruments alleged to have been executed by the daughters were not set out. The mother died intestate in August, 1930. She had executed a bill of sale in 1928. The grantees of her conveyance were the two daughters named in the father's conveyance. The language of the mother's conveyance was in other pertinent respects identical to that executed by the father. The daughter, Anna, died testate in February, 1942. Sophia, the plaintiff, was therefore the sole surviving grantee named in those conveyances.

The contention on behalf of the plaintiff was that each of the instruments created a joint tenancy in the grantees named therein and that since plaintiff was the sole survivor of such grantees she held title to all of the personalty described in the instruments together with all earnings and investments therefrom in both real and personal property.

Various persons were made parties defendant. The second amended petition admits certain defendants claim title to some property alleged to have been acquired through negotiations and transactions with the deceased daughter, Anna, during her lifetime. On behalf of plaintiff it is urged that since the conveyances of the father and mother each created a joint tenancy in the grantees therein named, Sophia, the sole survivor of such grantees, could not be deprived of title to any part of the joint tenancy by will, or deeds executed by her deceased sister, Anna. The trial court ruled the instruments did not create joint tenancies.

The statute of 1891 in force at the time these conveyances were executed reads:

"If partition be not made between joint tenants or joint owners of estates in entirety, whether they be such as might have been compelled to make partition or not, or whatever kind the estate or thing holden or possessed be, the parts of those who die first shall not accrue to the survivors, but shall descend or pass by devise, and shall be subject to debts or charges and be considered to every other intent and purpose as if such joint tenants or tenants of estate in entirety had been or were tenants in common; but nothing in this act shall be taken to affect any trust estate." (G. S. 1935, 22-132.)

In 1 Bartlett's Kansas Probate Law and Practice, section 405, is found a concise treatise of the general nature and legislative history of joint tenancies in this state, accompanied by supporting citations of our decisions. The first paragraph of that section reads:

"At the common law a conveyance or devise to two or more persons created in them an estate of joint tenancy. One of the peculiarities of such an estate was that upon the death of one grantee or devisee the survivor or survivors took the entire estate. The heirs or devisees of the deceased grantee or devisee took no interest in the property. If the grantees or devisees were husband and wife, the estate was called an estate by the entirety. On account of the common-law doctrine of the unity of husband and wife an estate by the entirety had some characteristics which did not inhere in joint tenancies generally. This doctrine of joint tenancy, as distinguished from tenancies in common, became in disfavor even in England; and most of the states in this country have abolished or greatly modified it."

In the following section of the same work, also supported by our decisions, the author states:

"Joint tenancies and tenancies by the entirety, with their doctrine of survivorship by operation of law as it obtained at the common law, are abolished in this state. It will be observed that the rule of survivorship in joint tenancies and tenancies by the entirety still obtains as to trust estates, and was not abrogated by the act. The nature of these tenancies should therefore be indicated.

"A joint tenancy exists where a single estate in property, real or personal, is owned by two or more persons, under one instrument or act of the parties. The grand incident of joint tenancy is survivorship, by which the entire tenancy on the decease of any joint tenant remains to the survivors, and at length to the last survivor. An estate by the entirety is defined as the estate held by husband and wife by virtue of title acquired by them jointly after marriage. The essential characteristic of an estate by the entirety is that each spouse takes the entire estate conveyed to him and does not take a separate portion of any estate. In such a case one alone, without the consent of the other, cannot sell, mortgage, or encumber the property. . . . The statute [referring to G. S. 1935, 22-132] merely puts an end to joint tenancy and survivorship as a matter of law—that is, in matters of intestate succession the common law rule of survivorship no longer prevails in this state. The statute does not undertake to forbid joint tenancy and survivorship by negotiation or contract of the parties concerned. It does not render unlawful contractual arrangements which confer equivalent legal rights and obligations among the parties concerned." (§ 406.)

See *Withers v. Barnes,* 95 Kan. 798, 802, 149 Pac. 691; *Malone v. Sullivan,* 136 Kan. 193, 196, 14 P. 2d 647 (1932).

While there is nothing to prevent a party, by contract or will, expressly providing that an interest in property shall be dependent upon survivorship, all presumptions are against such intention. (*Malone v. Sullivan,* supra, p. 197.) This was the law under the statute of 1891 (G. S. 1935, 22-132) which abolished joint tenancy and survivorship where it resulted by operation of law. In 1939 and as a part of the new property act the legislature enacted chapter 181, section 1 (G. S. 1943 Supp. 58-501) which provides:

"Real or personal property granted or devised to two or more persons including a grant or devise to a husband and wife shall create in them a tenancy in common with respect to such property *unless the language used in such grant or devise makes it clear that a joint tenancy was intended to be created; Except,* That a grant or devise to executors or trustees, as such, shall create in them a joint tenancy unless the grant or devise expressly declares otherwise." (Emphasis supplied.)

The 1939 statute, of course, does not govern the instant conveyances previously made. That statute however is helpful in obtain-

ing a clear understanding of our previous interpretation of the old statute by which this case is governed. The 1939 statute is G. S. 1935, 22-132 redrafted. The judicial council rewrote G. S. 1935, 22-132 to clarify it, to make the new law apply to personal property as well as to real property and to harmonize the new statute with the previous opinions of this court as interpreted by the judicial council. (See article by Mr. Justice Harvey in the May, 1939, issue of The Journal of the Bar Association of the State of Kansas, Vol. VII, No. 4, p. 377.) This interpretation of our former decisions under the statute of 1891 is also in conformity with the interpretation placed by numerous other courts upon similar statutes. In 14 Am. Jur., Cotenancy, § 13, it is said:

"As a result of the legislation mentioned in the preceding section, the ancient common-law rule favoring joint tenancies has been reversed, and the presumptions are now almost wholly in favor of tenancies in common. This means, of course, that in construing a grant to two or more persons, the courts will regard it as creating a tenancy in common, unless a contrary intent, sufficient to negative the presumption arising from the statute, plainly appears in the instrument itself. If such an intention appears, however, the courts are bound to give it effect; they have no right to deprive the parties of their right to convey property in such manner as they may desire under the law."

The question therefore is not whether joint tenancy may be created by a conveyance of the character here involved but rather whether the instant conveyance clearly discloses an intention to create such a tenancy. In other words, does it clearly appear from the language employed that it was intended the surviving grantee should acquire title to the entire estate described in the conveyance? Let us examine the basic conveyance, that of the father. The grant runs to the three separate and distinct persons named—"*their* heirs and assigns." (Emphasis supplied.) The instrument further directs that these three persons—"their heirs and assigns" shall hold the property conveyed to them—"as their own." In our opinion this language cannot fairly be construed to disclose an intention that the surviving grantee should acquire title to the entire estate.

All pertinent provisions in a conveyance must, of course, be considered and construed together with a view of ascertaining the grantor's intent. While the various designated stocks, bonds, securities and other items of personalty attached to the conveyance were not, by the terms of the instrument, divided and distributed among the three grantees, the grantor nevertheless expressly conveyed his personal estate to the three separate grantees, their heirs and assigns,

in "equal amounts." This fact is further evidence the grantor did not intend the survivor should acquire the whole of his personal estate but that each grantee should acquire "equal amounts" of the estate and that each had the right to hold such equal amount as her own. Briefly stated, we think the grantor intended to convey his personal estate to the three separately named grantees, their heirs and assigns, share and share alike. Each of them had the right to sell and assign her "equal amount." If she did not dispose of it, it was granted to her heirs. Such a conveyance does not create a joint tenancy under which the survivor acquires title to the entire estate. For a definition of joint tenancy, the essential elements thereof and the distinctions between joint tenancy and tenancy in common see 33 C. J. 901-907; 14 Am. Jur., Cotenancy, §§ 6, 7, 13-17.

In view of the interpretation placed upon the primary conveyance, namely, that of the father, we need not discuss a similar later conveyance of the mother. Plaintiff asks that this court also determine whether these instruments, when considered in connection with all other averments contained in the second amended petition, create a joint tenancy. If the trial court ruled upon that question, no appeal was taken from such ruling. The appeal by plaintiff is solely from the trial court's ruling interpreting the two instruments themselves and that is the only question presented for review. As previously stated, the demurrers of certain defendants to that petition were overruled and defendants did not appeal from that adverse ruling. It follows the rule of the case at this time is that the second amended petition, with the two instruments attached, stated a cause of action for some relief. We think the trial court correctly interpreted the instruments in question and that ruling is affirmed.